UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SARAH BATHRICK, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 3:11-cv-101 (VLB) |
| : | |
| MICHAEL J. ASTRUE, COMMISSIONER, : | MARCH 29, 2012 |
| SOCIAL SECURITY ADMINISTRATION, : | |
|     Defendant. : | |

**RULING ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER [Doc. #13] AND ON THE COMMISSIONER'S MOTION TO AFFIRM [Doc. #18] AND ADOPTING IN PART THE RECOMMENDED RULING [Doc. #23]**

**I. INTRODUCTION**

The plaintiff, Sarah Bathrick, brings this action pursuant to Section 205(g) of the Social Security Act. 42 U.S.C. §405(g). The plaintiff has moved for an order reversing the Commissioner's decision or, in the alternative, an order remanding this case back to the Social Security Administration for further proceedings. [Doc. #13] The Commissioner has moved for an order affirming the Commissioner's decision. [Doc. #18]. The plaintiff raises five issues on appeal: 1) whether the Administrative Law Judge (ALJ) made a proper determination that she has a residual functional capacity (RFC) to perform medium work; 2) whether the ALJ's mental RFC determination properly considered the Global Assessment Functioning (GAF) ratings; 3) whether the ALJ properly followed the standard for the use of a vocational expert pursuant to SSR 00-4p; 4) whether the ALJ properly evaluated the claimant's credibility; and 5) whether the ALJ considered all claimed impairments in combination.

For the reasons set forth below, the plaintiff's motion is granted to the extent she seeks a remand for further proceedings. The plaintiff's motion is denied to the extent it

1

seeks an order reversing the decision of the commissioner. The Commissioner's motion to affirm is denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Sarah Bathrick was born on August 27, 1952, and has completed high school. (Tr. 29, 156). Bathrick has worked as a clothes sorter, packager, and injection machine operator. She alleges that a combination of peripheral neuropathy, anxiety, depression and other impairments have rendered her unable to perform substantial gainful activity since September 15, 2008. Pl.'s Mem. 9.

Bathrick has been hospitalized various times for mental health treatment relating to anxiety, depression, and suicidal ideation. See, e.g., (Tr. 426, 295, 313–15, 295–97). Medical records indicate that the claimant has suffered from depression since her teens and that she was diagnosed with bipolar affective disorder with a history of domestic violence. (Tr. 429–30). Her medical records indicate that her hospitalizations were due to her failure to take her medications. (Tr. 365). Her most recent medical report notes that she came into her session feeling "anxious" and "tense" because she verbalized that she was scheduled for her "SSDI hearing next week." (Tr. 461). In fact, even though her Licensed Clinical Social Worker was aware that Bathrick had applied for benefits, the therapist did not opine that she has a qualifying impairment. Ex. 12F.

In addition to her mental impairments, the claimant suffers from nerve damage in her right leg that resulted from a spider bite in 2008. (Tr. 34). Doctors diagnosed this condition as neuropathy and treated it with physical therapy, Lidoderm pain patches, and neurontin. (Tr. 298–301, 317). The claimant alleges that, as a result of her

neuropathy, she experiences pain and numbness in her right foot that prevents her from sitting or standing for any length of time. (Tr. 35). She was treated by Dr. Rudzinskiy, a neurologist for her "right lower extremity infection and right foot weakness." (Tr. 260). His last report noted that the plaintiff "seems to have improved significantly." (Tr. 371). However, Dr. Rudzinskiy recommends a reevaluation of the plaintiff "in 4 months or sooner." Therefore, it is unclear if Balthrick's record is incomplete or if she abandoned treatment. Dr. Rudzinskiy has not opined that Bathrick has a qualifying impairment or if she is unable to work.

As a result of these impairments, she filed an application for Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI") on April 7, 2009. The Commissioner denied those claims on September 9, 2009. (Tr. 95–102).

Bathrick then filed a request for reconsideration of the Commissioner's denials. (Tr. 95–102). The Commissioner denied the claims again on December 9, 2009. (Tr. 107–9). Bathrick requested a hearing before an ALJ and the hearing was held on July 29, 2010. (Tr. at 26–49). The ALJ issued a decision denying Bathrick's requests for benefits on August 26, 2010. (Tr. 10–25). The Decision Review Board denied Bathrick's claim on November 29, 2010 and Bathrick now appeals to this Court.

### III. STANDARD OF REVIEW

The ALJ must apply a five-step sequential evaluation process to each application for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ determines whether the claimant is employed. If the claimant is unemployed, the ALJ proceeds to the second step to determine whether the claimant has a severe impairment that

prevents him from working. If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment is equivalent to an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have a listed impairment, however, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. If the claimant cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of the claimant's RFC, age, education, and work experience. The claimant is entitled to disability benefits only if he is unable to perform other such work.

      The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error . . . . Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  As long as there is substantial support for the decision in the record, any evidence in the record which could have supported a different conclusion does not undermine the Commissioner's decision. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record,

4

further findings would . . . plainly help to assure the proper disposition of [a] claim." *Kirkland v. Astrue*, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

## IV. DISCUSSION

### A. SUMMARY OF THE ALJ'S DECISION

Applying the five-step sequential analysis for disability claims outlined above, the ALJ concluded at step one that Bathrick "has not engaged in substantial gainful activity since September 15, 2008," the date of Bathrick's alleged disability onset date. (Tr. 16). At step two, the ALJ found that Bathrick suffered from peripheral neuropathy, anxiety, and depression." (Tr. 16). At step three, the ALJ determined that the medical record failed to support a finding that Bathrick had "an impairment or combination of impairments that meets or medically equals one of the listed impairments" in Appendix 1 of the regulations. (Tr. 16). In support of the determination at step three, the ALJ noted that Bathrick could "talk on the phone on a daily basis," that "she attends regular meetings," and "is able to go out alone and shop often." (Tr. 17). The ALJ stated that a "recent mental status assessment revealed the claimant to be oriented with an intact thought process and only minimal impairment of insight and judgment." (Tr. 17).

Before proceeding to steps four and five, the ALJ evaluated the entire record in order to determine the claimant's RFC. The ALJ considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. (Tr. 18). Following the two-step standard, the ALJ found that Bathrick's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the

5

[plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the" RFC assessment in the record. (Tr. 18).

In order to support his determination, the ALJ reviewed the relevant medical evidence in the record beginning with Bathrick's history of pain in her right foot. (Tr. 18). According to the ALJ, the description of the symptoms and limitations that Bathrick provided throughout the record were unpersuasive. (Tr.18). The ALJ found that Bathrick's daily activities are not limited to the extent one would expect, given Bathrick's complaints of disabling symptoms. (Tr. 18).

Next, the ALJ discussed Dr. Peter Rudzinsiky's November 2008 record that noted Bathrick's condition was improving with treatment. (Tr. 19). The ALJ then noted that more recent medical records indicate significant improvement with no motor weakness in Bathrick's right foot. (Tr. 19).

The ALJ then reviewed Bathrick's psychological treatments records and found that she retained the ability to perform jobs involving simple, routine, repetitive tasks with short simple instructions and few workplace changes. (Tr. 17). The ALJ noted that Bathrick generally reported feeling well, without suicidal thoughts. The ALJ also found that Bathrick's mental condition is stable when she complies with prescribed treatment. (Tr. 19).

The ALJ also addressed an examination of Bathrick by Dr. Thomas Hill on behalf of the SSA and noted that the plaintiff was found to have a severe mental impairment but retained the ability to carry out simple instructions and maintain sufficient concentration to complete a work day with normal breaks. (Tr. 20).

The ALJ then went on to determine the weight to be given to medical opinions in the record. (Tr. 20). The ALJ gave "little weight" to Dr. Sampson and Dr. Connolly's medical opinions, reasoning that they were not supported by more recent medical evidence. (Tr. 20). The ALJ found Dr. Hill's opinion to be well supported by the objective medical evidence and accordingly gave it "great weight." (Tr. 20). The ALJ gave Dr. Hill's opinion "great weight" based on the fact that treatment notes and medical evidence in the record supported his opinion. (Tr. 20). Based on this analysis, the ALJ concluded that Bathrick's RFC enabled her to do "medium work, limited to jobs involving simple, routine, repetitive tasks with short simple instructions and few workplace changes."[1] After making this finding, the ALJ proceeded to step four and concluded that Bathrick was able to perform her past relevant work, which included jobs as a sorter and a packer, and therefore, was not disabled as defined by the Social Security Act.

**B. ANALYSIS**

1) **WHETHER THE ADMINISTRATIVE LAW JUDGE (ALJ) MADE A PROPER DETERMINATION THAT SHE HAS A RESIDUAL FUNCTIONAL CAPACITY (RFC) TO PERFORM "MEDIUM WORK"**

The ALJ's denial of Bathrick's SSI claim hinged primarily upon his determination that she retained the RFC to perform medium work. This was critical to Bathrick's claim because the vocational expert defined all of her past relevant work as "unskilled medium." (Tr. 45). In response to a hypothetical posed by the ALJ, the Vocational Expert testified that an individual who can work at the medium level, but is limited to jobs involving simple, routine, repetitive tasks with short simple instructions and few

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

7

workplace changes would be able to perform all of Bathrick's past relevant work. (Tr. 45–46). Conversely, the vocational expert stated that none of Bathrick's past relevant work would be available to someone with an RFC less than medium. (Tr. 46). If the ALJ had determined Bathrick possessed an RFC less than medium, she would not have been able to perform her past relevant work, and therefore, would be considered disabled under Grid Rule 202.04.[2]

On appeal, Bathrick claims the ALJ's RFC finding was not supported by substantial evidence in the record. Specifically, Bathrick argues that the record does not contain any evidence suggesting an ability to lift 50 pounds. The Commissioner concedes this point, but nevertheless argues that the case does not warrant remand because the record lacks evidence contradicting the ALJ's RFC finding. Essentially, the Commissioner argues that Bathrick failed to meet her burden because she did not produce evidence that proves an inability to perform medium work.[3]

A review of the record does not provide much guidance on the question of Bathrick's physical limitations, in particular her ability to lift or carry specific amounts of weight. Her application does indicate that in her most recent job with the Salvation Army, she was "frequently" lifting up to 10 pounds. (Tr. 211). The medical records and opinions reflect "improvement" in Bathrick's condition. See (Tr. 272, 324, 369). But no physician ever stated her lifting capacity. While it may be true that Bathrick's condition

---

[2] Grid Rule 202.04 provides for "light RFC" for an individual of advanced age (55 to 59 years) who is a high school graduate or more with not more than an unskilled previous work experience history and has been determined disabled. Light work is defined in §404.1567(b) as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." To be considered capable of doing light work, the claimant must be substantially able to walk or stand a lot or sit for extended periods and push or pull with arm or leg controls.
[3] The claimant bears the burden of proof for the first four steps of the sequential evaluation process. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).

improved and she apparently abandoned treatment, these medical opinions and facts do not provide enough evidence to support the conclusion that Bathrick can perform medium work because they do not state that she can lift a specific number of pounds. While Bathrick's daily activities, which were described at the hearing as going to coffee, grocery shopping, and household chores do not, alone, support an RFC finding of "medium" because they also do not indicate whether the defendant can "frequently lift[] or carry[] objects weighing up to 25 pounds" with a maximum capacity of no more than 50 pounds.

Without further evidence specifically relating to Bathrick's physical limitations, the Court does not find that the record supports the AJL's RFC determination.  This deficiency may result from an incomplete record of her neuropathy treatment.  This case is, therefore remanded for the ALJ to obtain the necessary medical records and or opinions regarding Bathrick's physical limitations, including her abilities to perform the tasks required by medium level jobs

### 2) WHETHER THE ALJ'S MENTAL RFC DETERMINATION PROPERLY CONSIDERED THE GLOBAL ASSESSMENT FUNCTIONING (GAF) RATINGS

The plaintiff argues that the ALJ ignored her GAF ratings and that the Vocational Expert (VE) was never asked under hypothetical situations, whether claimant could work under such ratings.  To support her claimed "serious impairment in social, occupational, or school functioning" (Pl. Mem. at 27), she cites to transcript pages 429-30 and 432 allegedly containing GAF scores.  However, the record does not present any GAF scores on the cited pages, nor on any of the other treatment notes from the

Community Health Center. The Court, therefore, concludes that they were not considered by the ALJ because they were not presented by the claimant on the record.

### 3) WHETHER THE ALJ PROPERLY FOLLOWED THE STANDARD FOR THE USE OF A VOCATIONAL EXPERT PURSUANT TO SSR 00-4p

The standard for use of a vocational expert, as detailed in SSR 00-4p is:

1) Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by Vocational Experts (VE) or Vocational Specialists (VS) and information in the *Dictionary of Occupational Titles* (DOT), including its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), published by the Department of Labor, and
2) Explain in the determination or decision how any conflict that has been identified was resolved.

When there is an explicit inconsistency between the DOT and the VE's testimony, the ALJ must make additional inquiries to elicit a reasonable explanation of the conflict before relying on the VE's evidence to support a determination or decision about whether the claimant is disabled. *See, e.g. Martin v. Commissioner*, No. 5:06-CV-720 (GLS/DEP), 2008 WL 4793717 at *12 (N.D.N.Y. October 30, 2008)(rejecting plaintiff's argument that there was an inconsistency where no explicit conflict between the VE and the DOT is cited); *Sanfilippo v. Astrue*, No. 10-CV-0987, 2011 WL 2635732 at *4 (E.D.N.Y. July 5, 2011)(finding inconsistencies properly resolved on the record where the vocation expert discussed the range of work covered by a particular job and explaining his inconsistency with support from his experience and training); *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir.2007) (holding that the procedural requirements of SSR 00-4p require that the record is clear in resolving the apparent conflict); *Smith v. Astrue*, No. ED CV 08-1890-E, 2009 WL 1657440 at *2 (C.D. Cal. June 12,

2009)(applying *Massachi* in finding no material error where ALJ considered ailments alleged and found no inconsistency with the DOT); *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000)(finding the conflict alleged was not sufficient to prevent ALJ from relying on VE's testimony and finding claimant not "disabled.").

In this case, the ALJ specifically asked the vocational expert if his testimony was consistent with the DOT. (Tr. 47). To that question, the vocational expert responded in the affirmative. *Id.* The ALJ inquired further to clarify to which DOT number the vocational expert specifically referenced and to what type of sorter and packager he meant. The vocational expert stated that the "sorter" to which he referred was "for the Salvation Army, that's a garment sorter." (Tr. 48). This was Bathrick's last job as there was a lack of clarity, but no explicit inconsistency, between the DOT and the vocational expert's testimony and the vocational expert stated that there was no conflict, the ALJ was under no duty to make additional inquiries.

The Court concludes that the ALJ did properly augment the record with a finding that the DOT was consistent with the vocational expert's testimony and, therefore, denies the plaintiff's claim in this respect.

### 4) WHETHER THE ALJ PROPERLY EVALUATED THE CLAIMANT'S CREDIBILITY

The plaintiff next argues that the ALJ failed to state what he specifically believes and disbelieves in the claimant's testimony. She further argues that he does not state what the specific credibility determination is. Pl. Mem. at 35-36.

An ALJ may not disregard plaintiff's allegations concerning the severity of his or her symptoms "solely because they [we]re not substantiated by objective medical

11

evidence." SSR 96-7p, 1996 WL 374186, at *6.  The ALJ may properly note the absence of such supportive evidence in his overall credibility determination.  *See Curran-Kicksey v. Barnhart,* 315 F.3d 964, 968 (8th Cir.2003) (lack of objective medical evidence is one factor to consider in evaluating claimant's credibility); *Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6h Cir.1997) (insufficient objective medical evidence makes credibility a particularly relevant issue, and reviewing court will generally defer to ALJ's assessment when adequately supported).  The ALJ may also properly rely on the testimony concerning plaintiff's daily activities.  *See Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir.2005) (ALJ did not err in making adverse determination of claimant's credibility based on inconsistencies between claimant's descriptions of her diverse daily activities and her claims of infirmity); *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996) (in determining the credibility of a claimant's testimony about the severity of symptoms, an ALJ may consider the claimant's daily activities); *Crowley v. Barnhart,* 220 F.Supp.2d 176, 180 (W.D.N.Y.2002) (in assessing a claimant's credibility, ALJ considers various factors, including claimant's daily activities).

      The Court finds that the ALJ went to great lengths to describe his credibility determination on pages 6 and 7 of his decision.  (Tr. 18-19).  Specifically, he states that "[t]he description of symptoms and limitations that the claimant provided throughout the record has generally been inconsistent and unpersuasive."  (Tr. 18).  ALJ noted that her "treatment history and the objective medical evidence of record do not support her allegations with respect to the severity of her physical limitations."  (Tr. 19).  The ALJ then cites the treatment notes indicating an improvement of the claimant's peripheral

neuropathy with treatment and follows that discussion with a citation to her psychological treatment notes indicating that the claimant has retained the capacity to perform unskilled work.[4]  (Tr. 19).  The ALJ thus concludes that the weight of medical evidence does not support a finding that the claimant's statements regarding her impairments are credible.

The ALJ then goes on to list the various inconsistencies in her testimony that are supported by the record in her application for benefits in November, 2009 and the transcript of her testimony before the ALJ on July 29, 2010.  For example, the claimant testified that she does not like to go out of the house.  (Tr. 37).  However, she testified and reported in her application that she regularly has coffee with her neighbor and that she attends AA meetings at her church at least twice a week.  (Tr. 19 & 191).  The claimant also reported that she shops for several hours at a time three times a week in her application and that she can carry her cleaning supplies up and down stairs.  (Tr. 194-95).  Nonetheless, she stated in her testimony that she is unable to stand or walk for more than ten minutes at a time.  (Tr. 19).

The Court therefore concludes that the ALJ's findings concerning plaintiff's credibility are supported by substantial evidence.  *See Pietrunti v. Director, Office of Workers' Compensation Programs,* 119 F.3d 1035, 1042 (2d Cir.1997) ("credibility

---

[4] Dr. Rudzinskiy's assessment on November 4, 2008 indicates an improvement in the claimant's lower extremity and positive responsiveness to treatment. (Tr. 272).  His final note on July 15, 2009 indicates a finding of significant improvement. (Tr. 371).  However, the claimant never appears from the record to have followed up with Dr. Rudzinskiy's recommendation to follow up with him within four months for a reevaluation of her progress. Id.  Finally, the notes from Community Health & Wellness Center state that on March 6, 2009, the claimant's depression and anxiety were stable, that she has been continuing to take her medication, that she still experienced problems with her foot but that she was increasing her capacity to weight bear, and that she was generally "pleasantly attentive." (Tr. 324).  That same note stated that the claimant knows to not stop taking her medication even if she is not feeling well because she will experience suicidal ideations. Id.  The ALJ further considered the notes of Colleen McDermott on June 17, 2010 where she noted that the claimant has a history of not taking her medications. (Tr. 457).

13

findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable' ") (quoting *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th Cir.1994)); *Perez v. Barnhart*, 440 F.Supp.2d 229 (W.D.N.Y. 2006)(holding in part that substantial evidence supported the ALJ's credibility determinations with respect to the claimants allegation of the severity of his symptoms); *Matejka v. Barnhart,* 386 F.Supp.2d 198, 205 (W.D.N.Y.2005) (ALJ's "evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence"). The Court therefore denies the plaintiff's claim in this respect.

### 5) WHETHER THE ALJ CONSIDERED ALL CLAIMED IMPAIRMENTS IN COMBINATION

Finally, the plaintiff claims that the ALJ does not discuss the combined impact of her exertional and non-exertional impairments. She claims that by not considering her alleged anxiety and depression in combination with her foot pain, the ALJ committed reversible error.

Where multiple impairments are alleged, 20 C.F.R. §404.1523 permits the consideration of a combined effect of impairments on a claimant. In this case, the ALJ considered whether either or both her physical and psychological impairments impacted her activities. Where only one was alleged, for example the claimant limiting her driving due to physical not psychological pain (Tr. 18), the ALJ specifically stated so on the record. The report even concludes, "[i]n comparing the claimant's residual functional capacity with the <u>physical and mental demands</u> of this work, the undersigned finds that the claimant is unable to perform it as generally performed." (Tr. 20)(emphasis added). The Court, therefore, concludes that the ALJ did consider the claimed impairments in

combination and, therefore, denies the plaintiff's claim in this respect. Further, the positive tenor of the last treatment notes of her treating physicians and Bathrick's appartent abandonment of neuropathy treatment tend to support the ALJ's general conclusion that Bathrick's health has been sufficiently restored to enable her to return to her most recent "medium work" as a packer for the Salvation Army or a similar position.

## VI. Conclusion

Given the lacuna in the medical record this case is remanded for further development of the record and proceedings. Such is the case here. As previously noted, the record does not contain information sufficient to a finding that the plaintiff is physically limited to the point that she cannot lift up to fifty pounds, particularly where, as here, the record appears to be incomplete with respect to Bathrick's neuropathy treatment.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford Connecticut: March 29, 2012.